UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 12-61528-CIV-SCOLA

BRYAN RAY, GRETEL DORTA,
MICHAEL DIORIO, Ph.D., and
DEBORAH GIBSON, on behalf of
themselves and all others similarly
situated,

      Plaintiffs,

v.

SPIRIT AIRLINES, INC., a Delaware
corporation,

      Defendant.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiffs Bryan Ray, Gretel Dorta, Michael Diorio, Ph.D., and Deborah Gibson through

undersigned counsel, on behalf of themselves individually and all persons similarly situated,

make the following allegations herein regarding the Defendant on personal knowledge and

regarding all other allegations on information and belief. Plaintiffs bring this action for damages

under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), ("RICO")

arising out of Defendant Spirit Airlines, Inc.'s association with Accenture, Inc., Navitaire, Inc.

and MSP Communications, Inc., among others, for the deliberate purpose of engaging in an

enterprise to systematically assess and collect disingenuous hidden charges from Spirit Airlines

customers. Trial by jury is demanded.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

## NATURE OF THE ACTION

1.     This is a civil action to recover monetary damages, restitution and injunctive relief from Defendant Spirit Airlines, Inc. ("Defendant" or "Spirit"), arising out of its fraudulent, deceptive, and unconscionable collection of a Passenger Usage Fee (the "PUF").

2.     Spirit, headquartered in Miramar, Florida, was founded in 1990 and was, for a time, the nation's largest privately-held air carrier.  In March 2012, Spirit was named to the 16 Worst Companies in America Reader's Poll by The Consumerist, a popular consumer website. Spirit has become notorious for travelers' horror stories of ruined travel, money taken for services never rendered, and the shock of unsuspectingly having been maneuvered by Spirit's deliberately tricky website into incurring unintended fees for illusive services.

3.     In today's era of ubiquitous electronic flight booking, airlines compete in real-time on the Internet for customers by offering the lowest fare.  Spirit touts itself as an "Ultra Low Cost Carrier" ("ULCC") that offers fares far below other carriers.  In reality, Spirit is employing an "ancillary revenue model" which forces consumers to pay unbundled charges that have traditionally been included in the total price of an airline ticket.

4.     Spirit's "fares", in effect, are little more than a down payment on air travel. During the class period, Spirit has actively misrepresented the airfare for each flight segment booked by its customers because it unbundles certain fees including, but not limited to, the PUF, which is assessed for no other purpose than to increase Spirit's bottom line.

5.     By deceptively tacking on hidden charges, the "ancillary revenue model" is becoming Spirit's primary method of generating revenue.  During the first fiscal year quarter of 2012, Spirit generated an average of $51.68 in "non-ticket revenue" per passenger per flight

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

segment.  During that same period, Spirit's average ticket revenue was $76.65.  Spirit's "non-ticket revenue" rose 21 percent during this period.

6.      Spirit *claims* its success is because it maintains very low operational costs through exceptional efficiency, which purportedly allows it to pass savings on to its customers through cheap fares.  In reality, however, its greatest boost in revenue has resulted from its collection of numerous charges and fees that are added on to its deceptively advertised low fares, as evidenced by the 21 percent rise in "non-ticket" revenue from the first fiscal year quarters of 2011 to 2012.

7.      By method of Spirit's online sales platform, developed by the Defendant and various third parties, Spirit surreptitiously conceals the fees, including the PUF, that comprise the "non ticket revenue" that is at the heart of its "ancillary revenue business model."  The "non-ticket revenue" is from Spirit's fees and surcharges, which are difficult to spot and are hidden from customers, and *à la carte* services.

8.      Insofar as the PUF is concerned, this revenue mechanism, whether described by Spirit as an "ancillary revenue model" or otherwise, constitutes a distinct pattern of racketeering activity to defraud by omissions and misrepresentations in violation of 18 U.S.C § 1341 and 18 U.S.C § 1343.

9.      The fees/charges at issue, including the PUF, are not optional; customers *must* pay these hidden assessments when purchasing tickets on www.Spirit.com.  For domestic and international flights, Spirit has collected PUFs ranging from $8.99 to $16.99 per customer per flight.  Spirit lists the generic-sounding "PUF" along with government-imposed taxes and fees in an effort to conceal the true nature of this charge from customers.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

10.    By means of omissions and misrepresentations, Spirit misleads consumers to believe that the PUF is an official government tax or fee when, in reality, the fee is nothing more than additional airfare because Spirit does not provide any bona fide service in exchange for the PUF.

11.    Plaintiffs' RICO claim arise out of Spirit's association with third party consultants as specified below for the deliberate purpose of engaging in a pattern of racketeering activity presenting, assessing and collecting the bogus and unconscionable PUF.

12.    The design, development, and administration of Spirit.com is a deliberate strategy formulated and implemented by Spirit and its associates-in-fact in the RICO enterprise to further the scheme to defraud that facilitates Spirit's collection of the PUF.

13.    By means of this class action, Plaintiffs seek to redress a pattern of racketeering activity and the commission of the below-enumerated predicate acts. Spirit did knowingly and intentionally attempt to and did defraud Plaintiffs and all other class members similarly situated out of sums of money in connection with Spirit's fraudulent and misleading representations and omissions relating to the nature of the PUF – a fee that it includes with every purchase of air travel that consumers make through its website, www.spirit.com.

14.    The practice by Spirit constitutes, *inter alia*, wire fraud because Spirit obtains money from consumers through fraudulent pretenses, false representations and omissions made over the Internet and using interstate telephone lines.

15.    Since 2008, Spirit has unlawfully extracted more than $40 million from the Class as a result of its racketeering and fraudulent business practices.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

## JURISDICTION AND VENUE

16.     This Court has jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and the proposed class contains members who are residents of a state different than Spirit Airlines.  This Court also has original federal question jurisdiction because Plaintiffs' claims arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO").

17.     Venue is proper in the Southern District of Florida pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391 because Spirit is conducting business in Florida from its principal place of business, which is located in the Southern District of Florida and a substantial part of the events and omissions giving rise to the claims occurred in the district.

18.     Plaintiffs have retained the law firm of Podhurst, Orseck, P.A., to represent their interests and those of the absent class members in this matter and are obligated to pay the law firm a reasonable attorney's fee for their services.

## PARTIES

19.     Plaintiff, BRYAN RAY, is a natural person and resident of the State of New Jersey.  Mr. Ray is a customer of Spirit Airlines who, in or about March 2011, purchased a ticket for domestic airline travel from Spirit through its website.  As a result, Spirit charged and Plaintiff paid $16.00 in PUF charges.

20.     Plaintiff, GRETEL DORTA, is a natural person and resident of the State of Florida.  Ms. Dorta is a repeat customer of Spirit Airlines who purchased numerous flight

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

segments and consequently paid various PUF charges during the class period. For example, in or about July 2010, Ms. Dorta purchased a round trip ticket for domestic airline travel from Spirit through its website. As a result, Spirit charged and Plaintiff paid $17.98 in PUF charges.

21.     Plaintiff, MICHAEL DIORIO, Ph.D., is a natural person and resident of the State of New Jersey. Dr. Diorio is a repeat customer of Spirit Airlines who purchased numerous flight segments and consequently paid various PUF charges during the class period. For example, in or about October 2011, Dr. Diorio purchased a round trip ticket for domestic airline travel from Spirit through its website. As a result, Spirit charged and Plaintiff paid $17.98 in PUF charges.

22.     Plaintiff, DEBORAH GIBSON, is a natural person and resident of the State of New Jersey. Ms. Gibson is a frequent customer of Spirit Airlines who purchased numerous flight segments and consequently paid various PUF charges during the class period. For example, in or about January 2011, Ms. Gibson purchased a round trip ticket for international airline travel from Spirit through its website. As a result, Spirit charged and Plaintiff paid $33.98 in PUF charges.

23.     Defendant, SPIRIT AIRLINES, INC. ("Spirit" or "Defendant"), is a Delaware corporation, and was, at all times material hereto, doing business in Broward County, Florida. Spirit's corporate headquarters and principal place of business are located at 2800 Executive Way, Miramar, FL 33025.

<u>CLASS ALLEGATIONS</u>

24.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality,

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

adequacy, predominance and superiority requirements of Rule 23.

25.    The proposed Classes are defined as follows:

All Spirit Customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred a Passenger Usage Fee as a result of Spirit's practice of assessing and collecting baseless hidden fees (the "Nationwide Domestic Passenger Class").

All Spirit Customers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred a Passenger Usage Fee as a result of Spirit's practice of assessing and collecting baseless hidden fees (the "Nationwide International Passenger Class").

26.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

27.    As described throughout this Complaint, the Defendant engaged in a pattern of related and continuous predicate acts over a substantial, but closed, period of time.  The unitary scheme began sometime in or around 2008 and continued periodically until approximately August, 2011.  Plaintiffs reserve the right to modify or amend the Class description and the Class Period based on the results of discovery.

28.    Excluded from the Class are governmental entities, all customers who make a timely election to be excluded, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

29.    The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged baseless fees by Spirit

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

Airlines as a result of Spirit's practice of concealing so-called optional fees such as the Passenger Usage Fee in the flight booking process. The representative Plaintiffs, like all Class members, have been damaged by Spirit's misconduct in that they incurred and/or will continue to incur unfair and unconscionable hidden fees. Furthermore, the factual basis of Spirit's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

30.     Plaintiffs and the Class bring this action for damages, equitable and injunctive and declaratory relief pursuant to subdivisions (b)(1) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

31.     **Numerosity** - The proposed Class is so numerous that individual joinder of all its members is impracticable. The total number of Class members is at least in the hundreds of thousands. Members of the class are geographically dispersed across the United States, the identity of whom is within the knowledge and can be ascertained only by resort to Spirit Airlines' records. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

32.     **Commonality** - There are questions of law and fact common to the representative Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a.  Whether Spirit, as part of a racketeering scheme to defraud, intentionally conveyed to

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

consumers the impression that its PUF was a pass-through fee, uniformly charged by all competitor airlines;

b.  Whether Spirit and the RICO Enterprise, as described below, took steps to design and gain specific advantage by Internet marketing efforts and their Spirit.com online sales platform that would assess the PUF to any and all customers purchasing online;

c.  Whether Spirit maintained a corporate policy of misrepresenting and/or omitting the nature of its PUF by not clearly and accurately disclosing information necessary for a consumer to determine the purpose and validity of the fee;

d.  Whether Spirit trained or directed employees, as part of the racketeering scheme to defraud, to promote such a practice via marketing efforts and communications that included misrepresentations and/or omissions of fact; and

e.  The nature and extent of damages and other remedies to which the conduct of Spirit entitles the members of the Class and/or which should be assessed against Spirit.

33.  **Typicality** – Plaintiffs' claims are typical of those of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant's common course of conduct since they all were charged and paid PUFs.  Spirit's scheme to defraud, as outlined above, was employed as to Plaintiffs and each member of the class by a common sales platform and airfare marketing strategy.

34.  Spirit engaged in a common course of conduct, involving similar or identical plans, intent, design, statutory violations and schemes.  Individual questions, if any, pale by comparison to the numerous common questions that dominate this litigation.  The injuries sustained by the members of the class arise from a common nucleus of operative facts involving

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

Spirit's misconduct.

35.   **Adequacy** – Plaintiffs will fairly and adequately represent and protect the interests of the Class.   Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the Class.

36.   **Superiority of a Class Action**:   Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. The common issues outlined herein predominate over any individual issues in the case and will be the focus of this litigation.  Furthermore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.  It is economically impracticable for the class members to prosecute individual actions because the individual claims are expected to be less than $19.00 per class member per flight segment purchased.   Even if the class members could afford such individual litigation, the court system could not;

b.  Plaintiffs are aware of no other litigation concerning this controversy already commenced by Spirit's customers;

c.  Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Spirit;

d.  It is desirable to concentrate these claims in a single forum because no distinction exists amongst or between the members of the class sufficient to warrant litigation of the

10

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

claims separately; and

e.  There are no difficulties likely to be encountered in the management of a class action. To the contrary, individual litigation of the legal and factual issues raised by the conduct of Spirit would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.  Given the similar nature of the class members' claims, and the law applicable thereto, the Court and the parties will easily be able to manage a class action.

## FACTUAL BACKGROUND

### A.    SPIRIT'S PASSENGER USAGE FEE

37.    Spirit operates a website, www.spirit.com, (the "Website") that functions as an online platform for the purchase of Spirit airfare for the consuming public.

38.    Class members who purchase air travel through the Spirit website either log onto the World Wide Web and enter www.spirit.com or get directed to www.spirit.com via an Internet search website.

39.    Spirit, by and through the RICO Enterprise (as described below), is constantly redesigning its website and the information contained within in an effort to deceive consumers. The booking process described herein is but one version that Spirit has employed in its online sales platform during the Class Period to dupe customers into paying "optional fees" such as the PUF.

40.    Once on the Website, class members enter, either manually or via a drop down box, their departure airport, destination, and requested dates of travel.  Class members are then

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346        www.podhurst.com

directed to the "Flight Availability" webpage which displays available flights for the desired departure, destination and dates of travel.

41.    Class members select flight segments by clicking on a radio button to the right of their desired flights.  Once the departure and/or return flights have been selected, and as soon as the Class member clicks "Book" at the bottom of the webpage, the class member is directed to another web page labeled "Confirm Flights."

42.    The "Confirm Flights" webpage summarily sets forth a "Purchase Price" consisting of "Flight" charges and "Taxes and Fees."  While the website is modified and updated from time to time, a representative example of the page and those that follow is shown below:

Purchase Price

| | | |
|---|---|---|
| FLIGHT | | $129.00 |
| TAXES & FEES | | $19.00 |
| | TOTAL | $148.69 |

43.    The "Confirm Flights" webpage does not contain any breakdown of the taxes and fees being charged.  Instead, the "Confirm Flights" webpage contains a link entitled "More Information," which class members must click an additional time to obtain a breakdown of the taxes and fees.  A drop down box with the following information, for example, is then presented:

12

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

### Purchase Price

| | | |
|---|---|---|
| FLIGHT | More Information ▶ | $129.00 |
| TAXES & FEES | Less Information ▼ | $19.69 |
| Passenger Facility Fee | | $4.50 |
| Passenger Usage Fee | | $8.99 |
| Segment Fee | | $3.70 |
| September 11th Security Fee | | $2.50 |
| **TOTAL** | | **$148.69** |

44.     Three of the items described as "Taxes and Fees" are mandatory and/or officially sanctioned governmental, pass-through fees.  They are the "Passenger Facility Fee"; the "Segment Fee"; and the "September 11th Security Fee".  Embedded within the official governmental taxes and fees is a fee that Spirit cleverly calls the "Passenger Usage Fee."

45.     The PUF, which seems official because it sounds like and appears together with the official governmental taxes and fees, is anything but official or governmental in nature.  Rather, the "Passenger Usage Fee" is simply additional airfare that Spirit keeps for itself to increase its profit margin and/or induce consumers to purchase air travel through Spirit for what is perceived to be a lower airfare price than that which is offered by its competitors.

46.     Spirit does not disclose that the PUF is additional airfare, instead Spirit misrepresents that the PUF is a governmental or official pass through fee.  Indeed, there is no information about the PUF that is not hidden behind multiple layers of webpage selections.  Information provided by Spirit about the PUF for domestic travel can only be found if consumers hunt for it on other Spirit webpages.  The information that is eventually shown is as follows:

13

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

## Taxes And Fees

### Air Travel within the United States (Flight Only)

Quoted fare includes the base fare, any fuel surcharges and a 7.5% U.S. excise tax. The quoted fare does not include the following taxes and fees that may apply to your air travel.

- September 11th Security Fee: A September 11th Security Fee of $2.50 applies per enplanement originating at a U.S. airport up to $10 per roundtrip.
- Domestic Segment Tax: A segment tax of $3.70 per U.S. domestic flight segment (a flight segment is defined as one takeoff and landing).
- Passenger Facility Charges (PFC): Up to $18 per round trip per customer in local airport charges.
- Passenger Usage Fee: Passenger Usage Fee of $8.99 per one way travel per traveling customer applies to all reservations excluding bookings created directly at Spirit Airlines' airport locations.

47.     For International air travel, the charge is $18.99 per one way travel and the following information is provided:

### International Air Travel (including Puerto Rico and the U.S. Virgin Islands) (Flight Only)

- September 11th Security Fee: A September 11th Security Fee of $2.50 applies per enplanement originating at a U.S. airport up to $10 per roundtrip.
- APHIS User Fee of up to $5.00 per traveling customer upon arrival to the U.S.
- Immigration User Fee of up to $7.00 per traveling customer upon arrival to the U.S.
- Passenger Facility Charges (PFC): Up to $9.00 each way per traveling customer.
- International arrival/departure tax of $16.30 for each arrival and departure to and from the U.S.
- Passenger Usage Fee: Passenger Usage Fee of $18.99 per one way travel per traveling customer applies to all international reservations excluding bookings created directly at Spirit Airlines' airport locations as well as flights originating in or departing from airports in Colombia or Panama.
- Non-U.S. government taxes and fees of up to 19% of total fare.

48.     Clearly, the name of the fee, the placement of the fee among other official fees and taxes, and the vague and ambiguous description of the fee all indicate that Spirit has undertaken tremendous effort to devise a scheme to defraud through imposing a fee that it deceptively misrepresents as an official governmental tax or fee.

49.     Additionally, the fraudulent PUF is not even a permitted "unofficial" fee. According to DOT regulations, there are only three permitted categories of fees that an airline may charge consumers. They are (a) the quoted airfare; (b) official government fees and taxes (i.e. sent to a governmental or regulatory authority); and (c) carrier ancillary charges (i.e. kept

14

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346         www.podhurst.com

by the airline).

50.     Carrier ancillary charges are additional fees for additional services provided by the airline.  Examples of such fees are baggage fees, change fees and advance seat assignment fees.  There is no fourth category of fees for "additional profit".

51.     By recovering an additional, baseless fee in the form of the PUF, Spirit is able to reduce its advertised fares by the amount of the PUF without any negative impact to its gross revenues.  In other words, Spirit has fraudulently devised a mechanism through the use of its PUF whereby it advertises what appears to be a lower airfare than its competitors but then secretly recoups that "lost" airfare by intentionally misleading consumers to believe that its PUF is an official government tax or permitted fee.

52.     Indeed, reducing quoted airfare prices only to recover the "lost airfare" back under the guise of a "service fee" or "booking fee" has already been determined to be misleading and deceptive by the U.S. Department of Transportation ("DOT"), the federal agency imbued with oversight authority over the airlines.

**B.      THE U.S. DEPARTMENT OF TRANSPORTATION HAS ALREADY DETERMINED THAT THE PUF IS DECEPTIVE.**

53.     14 C.F.R. § 399.84, governing airline price advertising, expressly prohibits the precise business practices adopted by Spirit, as follows:

> The Board considers any advertising or solicitation by a direct air carrier, indirect air carrier, or an agent of either, for passenger air transportation, a tour (i.e., a combination of air transportation and ground accommodations), or a tour component (e.g., a hotel stay) that states a price for such air transportation, tour, or tour component to be an **unfair or deceptive practice, unless the price stated is the entire price to be paid** by the customer to the air carrier, or agent, for such air transportation, tour, or tour

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

component.  (Emphasis added.)

54.     The DOT has issued numerous notices and warnings to the airline industry, clearly advising that the advertising conduct employed by Spirit is deceptive, unfair and prohibited.

55.     As far back as January 18, 2001, the DOT issued a notice entitled "Prohibition on Deceptive Practices in the Marketing of Airfare to the Public Using the Internet," wherein it explained as follows:

> Despite [the DOT's] earlier advice, we have discovered a serious problem with price advertising on the websites of a number of major airlines and large Internet travel agencies. Under 14 CFR 399.84, fare advertisements by air carriers or their agents **must state the full fare charged the consumer**. The intent of the rule is to ensure that members of the public are given adequate fare information on which to base their airline travel purchasing decisions. Failure to state the full fare in advertisements, in addition to violating the rule, constitutes an **unfair and deceptive** trade practice and an unfair method of competition in violation of 49 U.S.C. 41712.
>
> * * *
>
> Airlines, travel agents, and other sellers of air transportation, in order to comply with the Department's fare advertising rule, must ensure that any ticket price displayed on their site includes all components required by the Department's full fare rule.  Non-government surcharges and fees, such as fuel surcharges and **service fees**, as well as *ad valorem* excise taxes, **must be included in the stated fare**.  (Emphasis added).

A true and accurate copy of the January 18, 2001 Notice is attached hereto as **Exhibit 1**.

56.     In a subsequent DOT Notice, dated November 5, 2004, the DOT advised that "[a]ny practice of excluding advertised fare extra "fees" charged to consumers that purchase tickets over the telephone through airline reservation centers, or at airport or city ticket counters,

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

therefore, would violate 14 C.F.R. 399.84, and constitute an unfair and deceptive trade practice and an unfair method of competition in violation of 49 U.S.C. § 41712." (Emphasis added). A true and accurate copy of the November 5, 2004 Notice is attached hereto as **Exhibit 2.**

57.     The DOT's November 5, 2004 Notice further concluded as follows:

> Some carriers have referred to this increase in the price for tickets bought from them over the telephone or at a ticket counter as a "service fee" or by a similar phrase. However, in the context of the full fare advertising rule, such carrier-imposed "fees" are a part of the fare and must be treated as such in airfare advertising.

58.     Spirit has repeatedly ignored such warnings from the DOT.  As a result, the DOT has initiated actions against Spirit, resulting in relatively minimal fines and requiring Spirit to cease and desist from its wrongful acts.

59.     Spirit agreed to the entry of a Consent Order (Docket OST 2008-0031), dated December 23, 2008, concluding that Spirit's website failed to include the PUF and other carrier-imposed fees in the advertised "base fare" in violation of 14 C.F.R. 399.84.  The Consent Order reflects that these advertising practices constituted an unfair and deceptive trade practice and an unfair method of competition in violation of 49 U.S.C. § 41712.  A true and accurate copy of the December 23, 2008 Consent Order is attached hereto as **Exhibit 3.**

60.     Again, on September 17, 2009, the DOT and Spirit entered into another Consent Order (Docket DOT-OST-2009-0001), finding that Spirit violated DOT rules requiring airfare ads to state the full price to be paid by omitting carrier-imposed fees from the base fare. A true and accurate copy of the September 17, 2009 Consent Order is attached hereto as **Exhibit 4.**

61.     Specifically, the September 17, 2009 Consent Order provided as follows:

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Spirit has violated 14 C.F.R 399.84 and 49 U.S.C. § 41712 by displaying fares on its website that did not include certain carrier-imposed fees in the advertised "base fare." Specifically, in the "Travel Deals" section of its website, Spirit included a number of fares for certain routes and dates. Next to those prices there was an asterisk, which led consumers to a fine print declaimer at the bottom of the page that stated that the fares do not include "a **Passenger Usage Fee** of $4.90 each way. *See* Ex. 4. (Emphasis added.)

62.     The September 17, 2009 Consent Order required Spirit to pay $375,000, $160,000 of which would only become due if Spirit violated the order within one year.

63.     Most recently, on November 21, 2011, Spirit entered into yet another Consent Order (Docket OST 2011-003) arising from Spirit's deceptively and unfairly advertising its fares, without adequately disclosing its own additional fees. As a result, Spirit was assessed $50,000 and ordered to cease and desist from further similar violations. A true and accurate copy of the November 21, 2011 Consent Order is attached hereto as **Exhibit 5.**

64.     Notwithstanding the "slap-on-the-wrist" penalties and fines repeatedly imposed and Spirit's professed agreements to cease and desist, Spirit has remained undaunted and has continued such wrongful conduct, in part because the fines are minimal compared to the profits generated by the deceptive and fraudulent conduct. In fact, the *modus operandi* of Spirit has been to commence a lengthy appeal process with the DOT while it continues to collect the unlawful charges. Another tactic employed by Spirit has been to actually drop the PUF from time to time for brief intervals, perhaps purposely "laying low" after sanctions have been imposed, only to resurrect the practice of collecting it again.

65.     In the latest act of defiance, in or about January 2012, Spirit publicly lashed out against the DOT regulation that required them to include taxes and fees when advertising the price of a ticket. "**WARNING: New government regulations require us to HIDE taxes in**

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   |   www.podhurst.com

**your fares"** reads a statement at the top of Spirit's website.  "This is not consumer friendly or in your best interest.  It's wrong and you shouldn't stand for it."

66.    "Spirit has embarked on a misguided and disingenuous project," wrote the DOT's top lawyer in a letter to Spirit criticizing the airline's misstatements on the pricing regulations.  "The rule does not prevent carriers from disclosing the amount, type, and nature of government taxes and fees."

**COUNT I**
**Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**

67.    Plaintiffs repeat paragraphs 1 through 66 above.

68.    This cause of action asserts claims against Defendant Spirit Airlines, Inc. for violations of 18 U.S.C. § 1962(c) for conducting the affairs of the "RICO Enterprise," through a "pattern of racketeering activity."

69.    During the Class Period, Defendant, its associates-in-fact, Plaintiffs, and Members of the Class were and are each a "person," as that term is defined in 18 U.S.C. § 1961(3).

70.    During the Class Period, Plaintiffs and each member of the class were and are each a "person injured in his or her business or property by reason of a violation of" RICO within the meaning of 18 U.S.C. § 1964(c).

71.    During the Class Period, Defendant was, and is, a "person" who conducted the affairs of the "RICO Enterprise" described below, through the "pattern of racketeering activity" described below.  While Defendant Spirit participates in the RICO Enterprise, it has an existence separate and distinct from the enterprise.  Further, the RICO Enterprise is separate and distinct from the "pattern of racketeering activity" in which Spirit has engaged and is engaging.

19

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

72.     During the Class Period, Spirit was associated with, operated or controlled, the RICO Enterprise, and Defendant participated in the operation and management of the affairs of the RICO Enterprise, through a variety of actions described herein.  Defendant's participation in the RICO Enterprise was necessary for the successful operation of Defendant's scheme.

### The RICO Enterprise

73.     Section 1961(4) of RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

74.     The following persons, and others presently unknown, have been members of and constitute an "enterprise" within the meaning of RICO, which are referred to herein collectively as the "RICO Enterprise:"

a.   Defendant Spirit Airlines;

b.   Spirit Officers and Executives, who have collaborated and colluded with the other associates-in-fact in the enterprise to cheat and deceive Spirit customers into paying a baseless fee that is neither sanctioned nor clearly disclosed, including without limitation:.

   i.   Spirit's Chief Executive Officer Ben Baldanza and Chief Marketing Officer/Senior Vice President, Barry Biffle, who joined Spirit in or about 2005/6 and orchestrated its turnaround as a ULCC through the institution of a new business plan, the aforementioned "ancillary revenue model."

   ii.  As previously described, this "ancillary revenue model" is a practice by which Spirit "unbundles" airfares in order to offer artificially-low "teaser" rates.

20

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

These "teaser" rates are never the ultimate cost of travel, as evidenced by the PUF.

 iii. The "ancillary revenue model" and the *à la carte* service offering were specifically designed by the Enterprise to be intentionally confusing and deceptive in order to fraudulently collect additionally moneys from Spirit customers.

 iv. Since 2008, these Spirit employees and others have worked with other associates-in-fact of the Enterprise, including external marketing consultants, software providers and developers, and other such expert consultants, to conceal from Spirit's customers that they had any option regarding payment of the PUF.

c. <u>Accenture/Navitaire</u>: Expert airline outsourcing service provider Navitaire, a wholly-owned subsidiary of Accenture, LLC, has assisted the RICO Enterprise by providing a comprehensive airline passenger sales and management solutions platform that has been specifically customized for concealment and assessment of the PUF.

 i. With the help of Navitaire, the RICO Enterprise has utilized platforms like Navitaire's Sky Sales, New Skies (a reservation and distribution system) and its Sky Price host pricing optimization services to refine and optimize variable costs and Spirit's ancillary revenue sources, like the PUF. These and Navitaire's Revenue and Decision Support products and services have been employed and manipulated by Spirit in devising ways to maximize revenues through hidden fees, including the PUF.

d. <u>Other Technology/Platform Consultants</u>: The middleware/software companies, and

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 www.podhurst.com

individual programmers, that assisted Spirit in the development of its client side reservation platform and in the development of modifications to its client side platforms for the goals of the RICO Enterprise.  During the Class Period, Spirit and its associates-in fact in the RICO Enterprise, including but not limited to those known and named above, developed, refined and periodically adapted its website's capabilities to fraudulently extract the PUF from unsuspecting and unsophisticated customers who were strategically encouraged to purchase directly from its intentionally deceptive website Spirit.com. At least one individual technology/platform consultant is known on information and belief:

> (a) Colt Cooper, an airline reservation software consultant and specialist in Accenture's Navitaire platform, who has worked extensively with Spirit to implement its website and reservation system.  Beginning in July 2007, Cooper converted Spirit's legacy airline reservation system for additional capabilities.  Cooper was involved in several development phases of the reservation software to the specifications of the enterprise, a platform that allows for concealment of the PUF in the booking process;

e.   Communications and Marketing Consultants: Communications consultant MSP Communications, Inc, a Florida corporation, and MSP President Misty Pinson ("MSP" and "Pinson", respectively) have been continuously involved in furthering Spirit's PUF enterprise.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

i.    Ms. Pinson is President of MSP, a Broward-based company that advertises expertise in strategic planning, marketing communications, travel industry relations and crisis management.

ii.   Pinson and MSP advise and consult the RICO Enterprise and the persons who create, manipulate, refine and revise Spirit's off and on website presentation of the PUF.

iii.  Pinson also serves as Spirit's Director of Corporate Communications and has been largely responsible for public relations regarding the PUF and Spirit's "ancillary revenue" model.

iv.   MSP and Pinson's involvement in the conception, orchestration and justification of the Enterprise's PUF strategy and the accompanying media and public relations strategy has been essential to the successful creation, management and perpetration of this fraudulent scheme.

v.    Throughout the class period, MSP Communications, Inc. and Misty Pinson have strategized, coached and spoken for Spirit, employing deceptive and manipulative marketing communications with the media, regulators and customers, many of which are intended to facilitate, disguise, obfuscate, justify and defend the collection of the PUF.

vi.   With the aid of MSP and Pinson, Spirit has waged a disingenuous media campaign in response to action by the governmental agency that regulates airline fares and fees regarding Spirit's deceptive imposition of the PUF.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

(a) A recent example of crisis management by the RICO Enterprise by its communication consultants occurred in the wake of the latest round of fines imposed by the United States Department of Transportation. On January 24, 2011, Spirit sent out a blatantly misleading communication to its website customers, cynically playing on the public's most paranoid big government fears. In big, bold black and red type the posting read: **"WARNING: New government regulations require us to HIDE taxes in your fares."** Spirit further contends that including the taxes with the posted fare will allow the government to increase it without anyone noticing. A true and accurate copy of the January 24, 2011 website communication is attached as **Exhibit 6**.

(b) In an indignant and public response, U.S. Senator Barbara Boxer wrote Spirit CEO Baldanza requesting that he remove the warning message from the website. Employing the typical Spirit spin that pervades the Enterprise's strategy to misrepresent and omit the PUF, Pinson told CNN, "We would normally expect Senators to encourage first Amendment protection."

vii. These factually distorted communications are typical of the brand of tactically deceptive crisis management utilized by the RICO Enterprise and its media consultants to further their fraudulent use of Spirit.com to extract the PUF.

75.    The "RICO Enterprise," which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) and

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

consists of "persons" associated together for the common purpose of employing the multiple deceptive, abusive and fraudulent acts described herein.  The RICO Enterprise is an ongoing organization with an ascertainable structure, and a framework for making and carrying out decisions, that functions as a continuing unit with established duties, and that is separate and distinct from the pattern of racketeering activity in which defendant has engaged and is engaging.  The RICO Enterprise was and is used as a tool to effectuate the pattern of racketeering activity.

76.     The members of the RICO Enterprise all had a common purpose: to increase and maximize the revenue of Spirit Airlines by increasing PUF and other fees received by Spirit Airlines, and by increasing such fees through a scheme that, in part, omitted and misrepresented that the fees were not related to government taxes and other fees, and that they were a bottom-line assessment for Spirit.    Spirit Airlines, Accenture, Navitaire, Pinson and MSP Communications, and the other members of the RICO Enterprise shared the bounty of their enterprise, *i.e.*, by sharing the benefit derived from increased fee revenue generated by the joint scheme to assess PUFs.

77.     Spirit Airlines conducted and participated in the affairs of this RICO Enterprise through a pattern of racketeering activity that lasted more than one year, at a minimum, and that consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

78.     As part and in furtherance of the scheme to defraud customers, Spirit designed and employed an airline ticket booking system to conceal and assess fees and charges, including

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

the PUF, via a website process designed specifically to obfuscate, omit and/or misrepresent the assessment and foundation for the PUF.

79.    As part and in furtherance of the scheme to defraud, the concerted scheme involved at least two freestanding entities, Spirit Airlines and its consultants Accenture (as well as its Navitaire subdivision), Misty Pinson and MSP Communications and others, to devise a reservation practice to generate fees by omitting and/or misrepresenting their actual purpose.

80.    As part and in furtherance of the scheme to defraud, Spirit's bad faith scheme to maximize fees depended on actionable deceptive conduct.  Spirit actively concealed the existence and the effect of the PUF from its customers by omitting material information and deceptive misrepresentations.

81.    As part and in furtherance of the scheme to defraud, Spirit directed and collaborated with Accenture and Navitaire on the development and implementation of the reservation system for the stated purpose of maximizing "ancillary revenue" and "non-ticket revenue," including the PUF.

82.    As part and in furtherance of the scheme to defraud, Spirit directed and collaborated with Misty Pinson and/or MSP Communications on the development and implementation of a marketing campaign to confuse the public and placate its customers regarding the PUF and Spirit's "ancillary revenue model."

83.    As part and in furtherance of the scheme to defraud, Spirit and its associates-in-fact in this enterprise have collaborated and colluded through strategic planning; conducting targeted market studies; capturing, analyzing and quantifying data; designing and customizing

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346        www.podhurst.com

website technology; and employing other means to further Spirit's deceptive scheme and to achieve website capabilities/ applications that deceive and cheat its customers.

## Predicate Acts (Mail and Wire Fraud)

84.    Section 1961(1) of RICO provides that "racketeering activity" is, among other things, any act that is in indictable under any of the provisions of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

85.    As set forth below, to carry out, or attempt to carry out its scheme to defraud, Defendant has engaged in, and continues to engage in, the affairs of the RICO Enterprise through the following pattern of racketeering activity, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

(a) Defendant with the assistance and collaboration of the other persons associated in fact with the enterprise devised and employed a scheme or artifice to defraud by use of the telephone and internet and transmitted, or caused to be transmitted, by means of wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including Spirit's website and the transfer of money, for the purpose of executing such scheme or artifice to defraud, in violation of 18 U.S.C. § 1341 and §1343.

(b) The above-referenced scheme or artifice involved the use of the internet and telephone to offer, advertise and convey the PUF to Plaintiffs and all other class members and to collect payment of the

27

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

baseless and deceptive fee from Plaintiffs and all other class members.

(c) As a part of the scheme to defraud, the RICO enterprise utilized the interstate and international wires for the purpose of obtaining money or property by means of the false pretenses and artifice to defraud, as described herein.

(d) The concealment of the nature of the PUF is the core purpose of the underlying racketeering offense. The enterprise had an ascertainable structure by which Spirit operated and managed the association-in-fact by relying on the expertise of public relations professionals and airline reservation system consultants to concoct, obfuscate, carry out and attempt to justify the fraudulent PUF scheme.

86.    All Spirit Airlines marketing materials that were delivered via interstate mail and wire (including the Internet) that directed customers to book online at Spirit.com are integral to the RICO Enterprise's racketeering activity, as reservations made on Spirit.com necessarily include assessment of the PUF for each passenger per flight segment. Spirit repeatedly sent marketing material to its customers in furtherance of this scheme which facilitated its collection of the excessive and unconscionable PUF pursuant to the scheme. These materials included weekly marketing emails, and other information supplied to Spirit customers who were encouraged to and did shop for airline tickets on the Spirit website. These materials were sent via the Internet and constitute numerous, repeated violations of 18 U.S.C. §§ 1341 and 1343.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

87.     Spirit repeatedly used the interstate wire facilities (including the Internet) in the development and in furtherance of its PUF scheme, in violation of 18 U.S.C. §§ 1341 and 1343, through wire communications within the Enterprise in order to plan and execute the PUF scheme.  These discussions were central to the development of the Spirit.com website as a means to carry out the PUF scheme.

88.     The Spirit.com website is itself an electronic wire instrument of interstate commerce that operates in violation of 18 U.S.C. §§ 1341 and 1343 because of its content and design, including, without limitation, how it functions to deceptively assess the PUF.

89.     Defendant and its associates in the enterprise repeatedly violated the wire fraud statute by statements and messages in wire communications that were stated in order to misrepresent the PUF, in violation of 18 U.S.C. §§ 1341 and 1343.

90.     In addition Defendant and its associates in the enterprise repeatedly violated the wire fraud statute by acts of omission, including the deliberate failure to properly disclose the nature and purpose of the PUF, as follows:

(a) They omitted, or buried information that would alert customers to the fact that they were paying the PUF only for the privilege of purchasing their tickets on the internet or by telephone rather than going to the airport counter.

(b) While deliberately encouraging the use of Internet and its website to purchase tickets, they omitted to clearly inform those customers that tickets would be cheaper if purchased at the airport.

(c) While touting their intention to let customers choose which services they wanted and were willing to pay for, Defendant omitted telling customers that their choice as to whether to purchase tickets on Spirit's

29

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Internet website or at the airport would have consequences that could cause them to pay more.

91.    The RICO Enterprise also has taken advantage of

92.    Spirit's conduct in furtherance of this scheme was intentional.  Plaintiffs and the other members of the proposed class were harmed in that they relied to their detriment on Spirit's conduct and, as a result, needlessly incurred excessive and unconscionable PUFs. Spirit unfairly reaped millions of dollars in excessive PUFs as a result of this scheme and its conduct in furtherance of this scheme.

93.    As described throughout this Complaint, the Defendant engaged in a pattern of related and continuous predicate acts over a substantial, but closed, period of time.   The scheme began sometime in or around 2009 and continued until approximately August, 2011.

94.    The predicate acts constituted a variety of unlawful activities, each conducted in furtherance of the Enterprise and with the common purpose of defrauding Plaintiffs and other victims and obtaining significant funds while recovering no meaningful service or product in exchange.  The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

95.    The predicate acts all had the purpose of diverting Plaintiffs' and all other class members' funds to Spirit by its use of the PUF.  The predicate acts were committed or caused to be committed by Defendant and its associates-in-fact in their fraudulent scheme, and were interrelated in that they involved converting Plaintiffs' and all other class members' funds.

96.    This factual predicate warrants further discovery into the RICO Enterprise as alleged.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

97.    Count I seeks relief pursuant to 18 U.S.C. § 1964(c) from the Defendant for violation of 18 U.S.C. § 1962(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an order or judgment against the Defendant as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3);

b.  certifying the proposed class and allowing notice to Class Members to be paid by Defendant;

c.  Designating Plaintiffs as representatives of the Class and their counsel as Interim Co-Lead Class counsel;

d.  Adjudging and decreeing that Defendant has engaged in the conduct alleged herein, entering final judgment in favor of Plaintiffs and the Class and against Defendant;

e.  Awarding Plaintiffs and the Class their individual damages and attorneys fees and allowing costs, including interest thereon; damages as permitted under 15 U.S.C. 1693(m)(a)(1)(B) and (3); and/or restitution and equitable relief;

f.  Awarding Plaintiffs treble damages for all injuries deemed to have resulted from Defendant's racketeering activities, pursuant to 18 U.S.C. § 1964(c);

g.  Awarding Plaintiffs and the members of the Class their costs, interest, and reasonable attorneys' fees incurred in prosecuting this action pursuant to 18 U.S.C. § 1964;

h.  Entering an injunction ordering Defendant to cease and desist from engaging in the fraudulent practices alleged in the Complaint;

31

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com

i.  Awarding both pre and post-judgment interest at the maximum allowable rate on any amounts awarded; and

j.  Any and all such other and further relief, in law or in equity, that this Court finds just and proper, to which Plaintiffs and the members of the class have shown themselves justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs on behalf of themselves and as representatives of the Class demand trial by jury on all issues so triable.

DATED this **14th** day of **September, 2012**.

Respectfully submitted,

PODHURST ORSECK, P.A.

Robert Josefsberg
Florida Bar No: 040856
Katherine Ezell
Florida Bar No: 114771
John Gravante III
Florida Bar No: 617113
Attorneys for Class Plaintiffs
25 West Flagler Street, Suite 800
Miami, FL 33130
rjosefsberg@podhurst.com
kezell@podhurst.com
jgravante@podhurst.com
Telephone:  305-358-2800/
Facsimile:  305-358-2382

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346        www.podhurst.com

## CERTIFICATE OF SERVICE

HEREBY CERTIFY that on this 14th day of September, 2012, the foregoing document

was filed with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to those listed on the attached Service List.

By: _____
         Robert C. Josefsberg

33

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346     www.podhurst.com

## SERVICE LIST

*RAY, et al. vs. SPIRIT AIRLINES, INC.*
CASE NO: 12-61528-CIV-SCOLA

United States District Court - Southern District of Florida - Fort Lauderdale Division

Scott M. Dimond, Esq.
Dimond Kaplan & Rothstein, P.A.
2665 South Bayshore Drive, PH-2B
Miami, FL 33133
Telephone: (305) 374-1920
Facsimile: (305) 374-1961
sdimond@dkrpa.com
*Counsel for Spirit Airlines, Inc.*

Daniel T. Graham, Esq.
Leslie A. Gutierrez, Esq.
Clark Hill PLC
150 N. Michigan Ave., Suite 2700
Chicago, Illinois 60601
dgraham@clarkhill.com
lgutierrez@clarkhill.com
*Counsel for Spirit Airlines, Inc.*

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346          www.podhurst.com