## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

BRYAN RAY, GRETEL DORTA, MICHAEL
DIORIO, Ph.D., and DEBORAH GIBSON, on
behalf of themselves and all other similarly situated,          **CASE NO. 12-cv-61528-RNS**

               Plaintiffs,

v.

SPIRIT AIRLINES, INC., a Delaware corporation,

               Defendant.       /

### DEFENDANT  SPIRIT AIRLINES, INC.'S RULE 12(b)(6) MOTION
### TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND
### MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, Spirit Airlines, Inc. ("Spirit"), hereby moves, pursuant to Fed. R. Civ. P.

12(b)(6), to dismiss the Amended Complaint filed by the named Plaintiffs, Bryan Ray, Gretel

Dorta, Michael Diorio, Ph.D., and Deborah Gibson, for failure to state a claim upon which relief

can be granted. In support of its Motion, Spirit relies upon the following Memorandum of Law,

incorporated herein and in support hereof.

### INTRODUCTION

The authority to find a U.S. airline's price advertising or marketing practices to be unfair

or deceptive is expressly reserved to the United States Department of Transportation (the

"Department").  *See* 49 U.S.C. §§ 40101 *et seq*.  Plaintiffs are directly challenging Spirit's price

advertising under the guise of a purported RICO claim.  Plaintiffs' grievance, that Spirit's $8.99

Passenger Usage Fee for online ticket purchases constituted fraud, belongs before the

Department, not the federal courts, as mandated by Congress.  Further, Plaintiffs' claims, like all

other direct assaults on an airline's ticketing advertising and pricing policies, are subject to the

Airline Deregulation Act ("ADA") and its express preemption provision.

While the preemption provision prohibits States from enacting or enforcing a law related to the price, route, or service of an air carrier, Congress never intended to allow private citizens to circumvent this preemption by disguising complaints against an airline's pricing practices as federal "RICO" claims.  49 U.S.C. § 41713(b).  Also fatal for Plaintiffs, in December 2008, the Department reviewed and approved Spirit's advertisement of the passenger usage fee upon which Plaintiffs' entire Complaint is based.  Plaintiffs cannot bypass these directives, nearly four years later, through the expedient of an inadequately pled RICO claim.  For these reasons, Plaintiffs' claims are subject to dismissal as a matter of law.

## PROCEDURAL BACKGROUND

On August 6, 2012, Plaintiff filed a complaint, individually and on behalf of a putative class, asserting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) based on Spirit's charge of the Passenger Usage Fee.  (D.E. 10).  On August 29, 2012 this Court granted Spirit an agreed extension of time to answer or otherwise plead until September 24, 2012.  (D.E. 10).  On September 14, 2012, Plaintiffs filed an Amended Complaint (the "Complaint" or "Cplt."), apparently to add additional class representatives.  (D.E. 13).

## STATEMENT OF RELEVANT FACTS

Plaintiffs' Complaint challenges Spirit's collection of the Passenger Usage Fee ("PUF"), specifically, the method in which the PUF is advertised on its website.  (Cplt., ¶ 1).  The PUF is a fee that Spirit "includes with every purchase of air travel that consumers make through its website, www.spirit.com" as opposed to those tickets purchased directly from the ticket counter at the airport.  (Cplt., ¶¶ 9, 13, 90).  As alleged in the Complaint, customers who "purchase air travel" through Spirit's website select flight segments by clicking on a button next to their desired flights, and are then directed to a confirmation page that sets forth the "Purchase Price"

2

of the ticket.  (Cplt., ¶¶ 38, 41-42).  The total "Purchase Price" consists of "Flight" charges and "Taxes and Fees".  (Cplt., ¶ 42).  On the confirmation page, there is also a link that can be clicked to obtain a breakdown of the included "Taxes and Fees", one of which is the PUF.  (Cplt., ¶¶ 42-43, 46).  Consumers can decide to purchase the ticket online, with the PUF included in the price, or at the airport without the PUF.  (Cplt., ¶¶ 42-44, 46, Ex. 3).

Plaintiffs allege that during the class period, defined as "around 2008…until approximately August, 2011", Spirit "actively misrepresented the airfare for each flight segment booked by its customers" by "unbundle[ing] certain fees, including, but not limited to, the PUF."  (Cplt., ¶¶ 4, 27).  According to Plaintiffs, the PUF is deceptive because Spirit "does not disclose that the PUF is additional airfare" and instead "misrepresents that the PUF is a governmental or official pass through fee."  (Cplt., ¶ 46).  The PUF is allegedly misrepresented because it "seems official because it sounds like and appears together with the official governmental taxes and fees" when, in fact, it is "simply additional *airfare*."  (Cplt., ¶ 45) (emphasis added).  Allegedly as a result of Spirit's "fraudulent, deceptive, and unconscionable collection" of the PUF, Plaintiffs and the proposed class were harmed by "needlessly incurr[ing] excessive and unconscionable PUFs."  (Cplt., ¶¶ 1, 92).

Plaintiffs further surmise that: "[b]y recovering an additional, baseless fee in the form of the PUF, Spirit is able to reduce its advertised fares by the amount of the PUF without any negative impact to its gross revenues" and advertise "what appears to be a lower airfare than its competitors."  (Cplt., ¶ 51).  Plaintiffs claim the Department has already determined that Spirit's advertisement of the PUF in this manner is deceptive, noting that Spirit agreed to the entry of two Consent Orders with the Department for violations of 49 U.S.C. § 41712 and 14 C.F.R. § 399.84 stemming from how the PUF was disclosed on its website.  (Cplt., ¶¶ 59-60, Exs. 3, 4).

Plaintiffs' sole count against Spirit is brought under RICO, 18 U.S.C. § 1962(c), for Spirit's alleged scheme to defraud through the imposition of the PUF fee, which is "deceptively misrepresente[d]" as an official government tax or fee. (Cplt., ¶¶ 48, 85). Plaintiffs aver that perpetuating this alleged scheme, which they characterized as criminal mail and wire fraud, constituted a "pattern of racketeering activity" that was carried out by a "RICO enterprise." (Cplt., ¶¶ 48, 68, 85). Plaintiffs allege that the "RICO enterprise" consists of: Spirit and numerous other non-parties, including: Spirit's Officers and Executives, Accenture/Navitaire, Colt Cooper (a reservation software consultant at Navitaire), MSP Communications, Inc., and Misty Pinson (President of MSP). (Cplt., ¶ 74). The members of the RICO enterprise allegedly all had the following common purpose: "to increase and maximize the revenue of Spirit Airlines by increasing PUF and other fees received by Spirit Airlines." (Cplt., ¶ 76). Plaintiffs assert that the underlying predicate acts for their RICO claim are violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, because Spirit used the interstate wire facilities and the U.S. mail in the furtherance of the scheme.[1] (Cplt., ¶¶ 85-87).

In their prayer for relief, Plaintiffs request that Spirit disgorge its collection of the PUF that is included in the total purchase price of a ticket (trebled), along with fees, interest, costs and an injunction. (Cplt., pp. 31-32, (e)-(i)). Plaintiffs also seek to certify a class. (Cplt., p. 31, (b)).

Not included in the facts alleged in Plaintiffs' Complaint, but a fact of which this Court may take judicial notice[2], is that on December 23, 2008, the same day that Spirit entered into its Consent Order with the Department in regard to the PUF (a copy of which is attached to the

---

[1]     The Complaint does not contain any specific allegations of Spirit's use of the mail for its alleged fraud.

[2]     "It is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996); *see also Southwest Ga. Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*, 2009 U.S. Dist. LEXIS 42428, 3 (M.D. Ga. 2009) (allowing judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority).

Complaint as Exhibit 3), the Department *approved* Spirit's disclosure of the PUF on its website.[3] (*See* Email communications between Department and Spirit representatives, attached hereto and incorporated herein as **Exhibit 1**, and Affidavit of David Kirstein, attached hereto and incorporated herein as **Exhibit 2**).

## ARGUMENT

### I.   Legal Standard.

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) will be granted when the plaintiff has alleged no facts which could lead to any judicial relief. *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000).   To avoid dismissal, the complaint must include enough facts to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Where a plaintiff's RICO claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, the substantive RICO allegations must comply with the plausibility criteria articulated by the U.S. Supreme Court decisions in *Iqbal*, and with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *ADA v. Cigna Corp.*, 605 F.3d 1283, 1291, (11th Cir. 2010).   Where a plaintiff's claims are preempted, dismissal with prejudice is the proper outcome.  *See, e.g., Swerhun v. Guardian Life Ins. Co.*, 979 F.2d 195, 196 (11th Cir. 1992).

---

[3]    The PUF was implemented in 2008 but its initial display was in effect for less than 30-days, as Spirit temporarily "discontinued these fees" after it had been contacted by the Department and while it developed a better understanding of "the scope of the rule."  (Cplt., Ex. 3, p. 2).  During the period in question, "Spirit was working on its website to ensure the site met the requirements of both the U.S. and foreign governments." (*Id.*).  The Department acknowledged that Spirit "cooperated in [its] investigation," but imposed a fine on Spirit as an exercise of its authority to ensure compliance with regulations.  (*Id.*).  Spirit accepted the fine and modified its website and advertisement of the PUF, which the Department subsequently approved.  (Exs. 1, 2).

5

## II.   The Department Has Exclusive Authority Over Airline Price Advertisements.

Plaintiffs' RICO claim should be dismissed because Plaintiffs are asking this Court to grant them the right to perform functions that Congress explicitly delegated to the Department. Even Plaintiffs admit that the Department is the authoritative body that monitors and regulates airline price advertisements, as reflected in the Department's notices, decisions and directives attached to the Complaint as Exhibits 1-5.   Further, as discussed in more detail below, what makes Plaintiffs' request even more unavailing is that the Department reviewed Spirit's proposed advertisement of the PUF in December of 2008 and approved it.

### A.  The existence of a comprehensive regulatory scheme precludes a private action.

While there does not appear to be a reported decision addressing a plaintiff's attempt to use federal RICO to directly challenge an airline's price advertising, federal courts have consistently held that when Congress enacts a comprehensive regulatory scheme, RICO is not a one-way ticket around the federal regulations.  For example, in *Ayres v. GMC*, plaintiffs brought a RICO class action lawsuit against defendants for failing to disclose a vehicle defect, despite having a duty to do so under the National Traffic and Motor Vehicle Safety Act ("Safety Act"). 234 F.3d 514, 516 (11th Cir. 2000).  Emphasizing the "unequivocal" indication that Congress did not intend to afford a "private right of action" under the Safety Act, and the "array of administrative remedies" that the Safety Act provided, including allowing consumers to bring complaints directly to the Secretary of Transportation, the Eleventh Circuit refused to allow a violation of the Safety Act to be the basis for a private civil RICO action.  *Id*. at 522-23; *see also Norman v. Niagara Mohawk Power Corp*, 873 F.2d 634, 637 (2d Cir. 1989) (rejecting the plaintiffs' attempt to circumvent extensive administrative scheme of the Energy Reorganization Act by pleading their claim under RICO); *DeSilva v. N. Shore-Long Island Jewish Health Sys.*,

770 F. Supp. 2d 497, 517 (E.D. N.Y. 2011) (dismissing plaintiffs' RICO claims that "merely re-cast plaintiffs' FLSA claims for unpaid overtime wages under a different label.").

Indeed, when a challenged activity is arguably subject to the provisions of an administrative agency, the States and the federal courts must defer to the exclusive competence of that agency.  *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242 (1959) (where Congress has entrusted the regulation of certain fields "to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience," the courts must defer to that agency).  This is especially true where the plaintiff's claims, however disguised, amount to nothing more than violation of the statute that granted that agency its authority in that field.  *See Tamburello v. Comm-Tract Corp.*, 67 F.3d 973, 979 (1st Cir. 1995) ("Because plaintiff's claim hinges upon a determination of whether an unfair labor practice has occurred, we conclude that his RICO claims are subject to the primary jurisdiction of the [National Labor Relations Board].").

Here, even accepting Plaintiffs' allegations as true, it is clear that the Complaint is simply an artful attempt to circumvent Congress' regulatory framework by the invocation of RICO.  *See e.g. Norman*, 873 F.2d at 637 ("artful invocation of controversial civil RICO, particularly when inadequately pleaded, cannot conceal the reality that the gravamen of the complaint herein is [a violation of] section 210 [of the Energy Reorganization Act.]").  As explained below, when the allegations in the Complaint are aligned with the legislative goals of the FAA, the Department's regulatory framework, and applicable precedent, it is apparent that Congress did not intend for private regulation of an airline's advertisement practices, as Plaintiffs attempt here.

**B. Congress intended the Department's regulation of airline price advertising to be exclusive.**

First, the origins of the FAA frame the breadth of the Department's, *not Plaintiffs'*, authority to regulate the advertisement of airline prices.  In 1958, Congress passed the FAA to set up a broad regulatory scheme to govern air carriers, protect consumers from deceptive practices, and allow them to bring complaints against airlines directly to the Civil Aeronautics Board ("CAB").  *See Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1250 (6th Cir. 1996).   In 1978, Congress passed the ADA, which amended the FAA and eliminated the authority of CAB, which was later transferred to the Department.  *Id.*  The purpose of the ADA was "to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms." *Am. Airlines v. Wolens*, 513 U.S. 219, 228 (1995).  But to the extent that issues relating to an airline's price advertising could arise, the Department was granted the express authority to address them.  *Id.* at n.4.  Thus, Congress, through the foregoing legislation, "establish[d] that DOT, *not private parties*, will enforce consumer protection rules against airlines." *Statland v. American Airlines*, 998 F.2d 539, 541 (7th Cir. 1993) (emphasis added); *see also PAN AM v. United States*, 371 U.S. 296, 302 (1963) ("It is clear…that [the CAB]…has jurisdiction over unfair practices and unfair methods of competition.").

Congress also established an extensive administrative process specifically for addressing complaints concerning an airline's price advertising.  Section 41712 of the FAA and section 399.84 of the corresponding regulations expressly govern the advertisement of airline prices. *See* 49 U.S.C. § 41712; 14 C.F.R. § 399.84.   Section 41712 authorizes the Secretary of Transportation (the "Secretary"), on its own initiative, to investigate and decide whether an air carrier has engaged in a deceptive practice or an unfair method of competition, and section 399.84(a) requires that carrier imposed fees be included in the advertised fare.  *Id.*  Currently,

8

any person may file a formal or informal complaint with the Secretary, with the detailed steps for how to do so provided in section 302.401.  14 C.F.R. § 302.401 *et. seq.*  49 U.S.C. § 46101; *see also Musson*, 89 F.3d at 1250.  After such a complaint is filed, the Secretary has the authority to conduct investigations of an alleged "unfair and deceptive practices" and seek an informal resolution or commence a formal enforcement proceeding before an administrative law judge. 49 U.S.C. § 46101; 14 C.F.R. §§ 302.405, 302.407.  If an investigation or enforcement proceeding is held, any person may appear and be heard before the Secretary.  *See* 49 U.S.C. § 46102(b).  Finally, the Secretary may impose civil penalties on airlines for violations of the statutes or regulations, including section 41712 governing unfair or deceptive practices.  *See* 49 U.S.C. § 46301(a)(1).

The extensive regulatory scheme for regulating airlines establishes that Congress did not intend for private regulation of the airline industry through private lawsuits filed in federal court. To that end, Congress' mandate to keep the regulation of an airline's prices, routes, and services within the purview of the Department has long been enforced, as evidenced by the many courts that have held that there is no private right of action under the ADA (or FAA).  Every court faced with the question of whether a provision of **"the ADA [or FAA] allows the implication of a private right of action against an airline has answered the question in the negative."** *Musson*, 89 F.3d at 1251 (emphasis added); *see also Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 522 (5th Cir. 2002); *Buck v. Am. Airlines*, 476 F.3d 29, 34 (1st Cir. 2007) ("for the purpose of implying private rights of action, the FAA, and hence, the ADA, is barren soil."); *Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 856 (1st Cir. 2004); *Statland*, 998 F.2d at 540-41; *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 97 (2d Cir. 1986), *cert. denied*, 479

9

U.S. 872 (1986); *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 338-40 (3rd Cir. 1975). Therefore, neither the FAA, nor the ADA, permit Plaintiffs' attempt at private regulation.

### C. Plaintiffs' claims fall squarely within the purview of the Department.

Plaintiffs in this case are fully aware that the Department is "the governmental agency that regulates airline fares and fees." (*See* Cplt., ¶ 74(e)(vi)). Yet, Plaintiffs attempt to evade the Department's authority over their claims by couching them under RICO claims and equating Spirit's alleged deceptive advertising with the crimes of mail and wire fraud. (Cplt., ¶ 82). The substance of Plaintiffs' allegations amount to nothing more than purported violations of section 41712 of the FAA and Department regulations, which, as set forth above, are expressly within the purview of the Department. Plaintiffs' RICO claim alleges Spirit engaged in a "fraudulent scheme" of advertising what appears to be a lower airfare than its competitors by concealing the existence of the PUF until the total purchase price is revealed to the consumer. (Cplt., ¶ 51). Yet, as illustrated by Exhibit 3 of the Complaint, the Department has already investigated Spirit over the same allegations: determining that Spirit "violated 14 C.F.R. 399.84 and 49 U.S.C. § 41712 by displaying fares which did not include [the PUF]", assessing a fine, and subsequently finding Spirit's modified display of the PUF "acceptable" in December 2008. (Cplt., ¶ 59, Ex. 3; Exs. 1, 2). Thus, Plaintiffs' RICO claim is inextricably intertwined with the Department's determination of what constitutes an alleged violation of 49 U.S.C. § 41712, and the Department has already made this determination in regard to Spirit's PUF.[4]

---

[4]     After the Department notified Spirit in 2008 that its display of the PUF violated its regulations, Spirit agreed to the December 23, 2008 Consent Order and modified its advertisement of the PUF, which modification the Department approved. (*See* Cplt., Ex. 3; Email; Aff. ¶ ). The Consent Order attached as Exhibit 4 addresses the PUF, but only to the extent that it was included with an asterisk in a promotional advertisement, and the Consent Order attached as Exhibit 5 does not address the PUF at all. (*See* Exs. 4, 5). Importantly, the Department *never* found the actual charging of the PUF as a separate fee to be an unfair or deceptive practice. (*See* Exs. 3, 4, 5).

Congress intended to prevent States from regulating the airline industry's price advertisement practices – a task they delegated to the Department – and from undoing the deregulation brought under the ADA with regulation of their own.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 (1995).  To allow Plaintiffs, as private citizens, to do what Congress delegated to the Department to do and prohibited "States" from doing, would undermine Congress' express intent and directives.  It is simply not plausible that Congress meant to allow private individuals to channel into federal courts the business of resolving, under the guise of RICO, issues relating to the advertisement and price of an airline ticket.  *See Musson*, 89 F.3d at 1251.  Yet, this Court is now being asked to adjudicate Plaintiffs' disagreement with the Department's approval of Spirit's advertisement of the PUF, and impose treble damages based on Plaintiffs' contrary interpretation of what constitutes a "deceptive practice" or "unfair method of competition."  That decision belongs exclusively to the Department.  *See Musson*, 89 F.3d at 1251, *relying on Wolens*, 513 U.S. at 229 ("Congress intended the DOT to be the sole legal control on possible advertising fraud by air carriers.").  Accordingly, Plaintiffs' Complaint must be dismissed with prejudice.  *See DeSilva*, 770 F. Supp. 2d at 504 (plaintiff's RICO claim, identical to a FLSA claim, dismissed with prejudice).

**III.    <u>The Airline Deregulation Act Preempts Plaintiffs' RICO Claim.</u>**

Even if this Court were to find that the Department does not have primary jurisdiction to address Plaintiffs' complaints about Spirit's advertisement of the PUF, Plaintiffs' claim is subject to the ADA's preemption clause because it directly relates to Spirit's prices and seeks to regulate it in a manner expressly prohibited by the ADA.  When Congress enacted the ADA, it intended to ensure that "the States would not undo federal deregulation with regulation of their

own."  *Morales,*  504 U.S. at 378. To effectuate that intent, Congress included a preemption clause, which provides that a claim is preempted by the ADA if: (1) the claim relates to airline *prices*, routes, or services, and (2) the claim derives from the enactment or enforcement of state law.  49 U.S.C. § 41713(b) (emphasis added); *see also Branche v. Airtran Airways, Inc.,* 342 F.3d 1248, 1254 (11th Cir. 2003).

### A.  Plaintiffs' RICO claim relates directly to the price of Spirit's airline ticket.

The meaning and reach of the phrase "relating to [prices][5], routes, or services" was first brought before the Supreme Court in *Morales* in 1992.  504 U.S. at 383.  The Supreme Court in *Morales* held that the plain meaning of the term "relating to" as stated in the preemption clause indicated that Congress intended the scope of preemption to be broad.  *Id.*  Thus, any state enforcement action that has some "connection with or reference" to airline prices, routes, or services are preempted under the ADA.  *Id.* at 384.  Here, Plaintiffs cannot deny that the Complaint is a direct attack on Spirit's *price* advertising.  Plaintiffs incorporate in their Complaint a copy of a confirmation page, which plainly illustrates that the PUF is part of the total "Purchase Price" of a Spirit airline ticket.  (Cplt., ¶¶ 42-23).  And Plaintiffs assert, numerous times, that the PUF is "nothing more than additional airfare."  (Cplt., ¶¶ 10, 45, 46).

Similar attacks by class action plaintiffs against an airline's prices have been summarily dismissed.  In *Buck*, the plaintiffs accused the airline of unlawfully failing to refund various fees that had been collected as part of the ticket price.  476 F.3d at 31.  The First Circuit dismissed the plaintiffs' claims as preempted because "an airline must account for the fees when setting its own rates….[i]t follows that a finding for the plaintiffs in this case would impact [American Airline's] base fares."  *Id.* at 36.  And in *Newman v. Spirit Airlines, Inc.*, plaintiff, on behalf of a

---

[5]      The preemption clause originally used the phrase "rates, routes, or services," which was changed to "price, route, or service" in 1994 when the ADA was re-codified.  103 Pub. L. No. 272, 108 Stat. 745 91994).

putative class, sued Spirit based on its charge of a $2 each-way fee on all airline purchases.  2012 U.S. Dist. LEXIS 107197, *1 (N.D. Ill. 2012).  The Court dismissed the plaintiff's breach of contract claims as preempted because "[t]he fee [was] listed on plaintiff's receipt and [was] undoubtedly a direct component of the final airline ticket purchase price."  *Newman*, 2012 U.S. Dist. LEXIS at *6, 10.  Likewise, Plaintiffs' RICO claim attacking Spirit's disclosure and charge of the PUF, plainly listed on Spirit's airfare receipt, fits squarely within the designation of "relating to price" for purposes of ADA preemption.

### B.  The ADA's broad preemptive effect bars Plaintiffs' RICO claim.

After diligent research, Spirit could not locate a single reported decision wherein a passenger's direct assault on an airline's price advertisements, like the claim presented here, was sustained.  Not one.  Further, the only reported decision wherein a plaintiff sought to circumvent ADA preemption by bringing a claim under the federal RICO statute is *All World Professional Services, Inc. v. Am. Airlines, Inc.*  282 F. Supp. 2d 1161 (C.D. Cal. 2003) (holding plaintiff's RICO claim not preempted by the ADA).  Although the Court stated in dicta that plaintiff's RICO claims were "federal", and thus not prohibited "state" law claims under the ADA, *All World* is readily distinguishable on its facts and law, and the Court's logic is highly suspect in light of its failure to address the cases cited *supra*.  Indeed, the Court in *All World* first held that *none* of the claims brought by the plaintiff, a travel agency who contracted with American Airlines, *related to* its prices, routes, or services.  282 F. Supp. 2d at 1171-72.  Thus, the failure to satisfy the first prong of ADA preemption already placed the plaintiff's claims outside the ADA's reach.  Here, Plaintiffs' RICO claim, directly challenging Spirit's advertisement of the PUF, is subject to ADA preemption.

As discussed below, it is clear that the second prong of *Morales* is satisfied here.

1.  <u>The Supreme Court has held that Congress intended the ADA preemption be construed broadly.</u>

In *Morales*, the Supreme Court declared that the ADA preemption provision should be construed broadly, referring to the "sweeping nature" of the preemption provision.  504 U.S. at 384-85.  Several years after *Morales*, the breadth of the ADA's preemption provision was reaffirmed in *Wolens*. 513 U.S. at 245 (1995).  And the 11th Circuit has followed that precedent: "as the Supreme Court plainly explained in *Morales*, the ADA's pre-emption clause is properly afforded an *extremely broad* scope."  *Branche*, 342 F.3d at 1257 (emphasis added); *see also Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 (11th Cir. 2005) (affirming summary judgment for defendant where plaintiff's breach of contract claim was preempted by the ADA); *Miller v. Delta Air Lines, Inc.,* 2012 U.S. Dist. LEXIS 48294, *8 (S.D. Fla. 2012) (dismissing class action lawsuit premised on defendant's failure to reimburse plaintiffs for delayed baggage as preempted under the ADA).

The ADA preemption clause has been afforded a broad application to achieve Congress' objective in enacting the ADA: "to prevent the States from 'imposing their own public policies or theories of competition or regulation on the operations of an air carrier.'"  *Branche*, 342 F.3d at 1255, *citing Wolens*, 513 U.S. at 229.  ADA preemption was established to maintain regulatory uniformity and avoid the confusion and burdens that would result if interstate and international airlines were required to respond to the varying and inconsistent standards of individual states.  *See Johnson v. Baylor Univ*., 214 F.3d 630, 633 (5th Cir. 2000).  Allowing Plaintiffs to skirt the regulatory scheme for bringing claims against an airline for alleged deceptive acts or unfair prices, under the guise of a federal RICO claim, would certainly thwart the uniformity that drove Congress to enact the ADA.  To reach a different result would force airlines to respond to the standards sought by *individual passengers* in federal courts across the

14

country.  That result is exactly what Congress intended to prevent when it enacted the ADA.  *See Morales*, 504 U.S. at 388.

      2.  <u>Plaintiffs' RICO claim is akin to a state law consumer fraud claim, enforcement of which would have the forbidden effect of regulating Spirit's airfare prices.</u>

As stated by the First Circuit in interpreting *Morales* and *Wolens*, "the Supreme Court has focused on the effect that a state law has on carrier operations, not on the state's purpose for enacting the law."  *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 77 (1st Cir. 2006).  The First Circuit noted that in both cases, "the Court's preemption analysis centered on the impact that the challenged state laws had on airline [prices]."  *Id.*  Consequently, under *Morales* and its progeny, claims which have a *significant effect* on prices, routes or services are preempted by the ADA, whether the claims specifically address the airline industry or are laws of general applicability. *Morales*, 504 U.S. at 386, 390 (emphasis added); *see, e.g., Buck*, 476 F.3d at 35-36; *Statland*, 998 F.2d at 541; *Koutsouradis*, 427 F.3d at 1344.  It is the effect of the underlying claim upon prices that drives the application of preemption under the ADA, not just whether the underlying law is a "state" or "federal" attack on an airline's prices, routes or services.

When looking at the conduct targeted by Plaintiffs' mail and wire fraud allegations, which serve as the predicate acts for their RICO claim, it is evident that Plaintiffs' claims are more akin to the state law consumer fraud claims, enacted to protect consumers from such acts as deceptive advertising, than mail or wire fraud.[6]  *See, e.g., Suris v. Gilmore Liquidating*, 651 So. 2d 1282, 1283 (Fla. 3d DCA 1995) (plaintiff sued car dealership under Florida's Deceptive and Unfair Trade Practices Act for misrepresenting the true price of a new car).  Of course, consumer

---

[6]     "Prior to 1900, the federal government rarely legislated in the area of consumer protection" because "[p]rotecting consumers was instead the province of state and even municipal governments."  Edward M. Crane, *et al.*, *U.S. Consumer Protection Law: A Federalist Patchwork*, 78 DEF. COUNS. J. 305, 306 (2011).  Since that time, some federal consumer protection law has emerged, "generally scattered among the various topical commercial laws.", whereas "every state has enacted laws prohibiting unfair or deceptive business practices."  *Id.* at 305-06.

fraud laws inevitably have an industry-wide effect on airline prices because they provide the rules for price advertising and other marketing policies, which is why they are preempted by the ADA. *See Morales*, 504 U.S. at 389-90. Plaintiffs' RICO claim, identical in substance and effect to a state consumer fraud claim, does not escape this result. *See Wolens*, 513 U.S. at 228 (a state consumer fraud act "serves as a means to guide and police the marketing practices of the airlines," which is not permitted under the ADA).

Therefore, Plaintiffs' RICO claim is subject to ADA preemption due to its inherent potential for intrusive regulation of airline marketing practices. *See Wolens*, 513 U.S. at 227. Affording relief to Plaintiffs admittedly would have a direct and significant impact on Spirit's prices. If Plaintiffs are successful, $40 million in PUF fees would have to be returned and Spirit would undoubtedly have to change its entire advertising and pricing methodology, contrary to the Department's prior decision. Consequently, sustaining Plaintiffs' Complaint would have the "forbidden significant effect" on Spirit's price advertising. *Morales*, 504 U.S. at 388; *see also Miller*, 2012 U.S. Dist. LEXIS at *8 (enforcing plaintiffs' claims would "impermissibly sanction regulation…and would interfere with the provision of baggage handling services to their passengers, thereby offending the stated purpose of the [ADA].").

Plaintiffs' RICO claim is subsumed by the broad preemption net Congress cast to prevent inconsistent regulation of airline price advertising, especially since the advertisement of those prices have already been approved by the Department. (*See* Exs. 1, 2). As a result, Plaintiffs' Complaint must be dismissed with prejudice.

## IV.    Plaintiffs Fail to Sufficiently Plead a Cause of Action under RICO.

While the ADA clearly prevents Plaintiffs' claims, Plaintiffs also fail to plead a proper RICO set of facts. As the Eleventh Circuit has explained, "[c]ivil RICO claims, which are

essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).   More specifically, to state a claim under RICO, a plaintiff must allege: (1) a violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) that the violation caused the injury." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).  Here, Plaintiffs failed to plead the elements of a RICO claim with the required specificity.

### A.  Plaintiffs' Complaint lacks the required specificity to plead a violation of § 1962.

Plaintiffs' Complaint lacks the substance to establish any of the elements required for a violation of § 1962(c).  In order to adequately plead the first element, a violation of § 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See Williams v. Mohawk Indus. Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006).  With regard to elements (1) and (2) of the four-part test under § 1962(c), the plaintiffs must establish "conduct of an enterprise" and that the enterprise had a common goal.  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  A "pattern of racketeering activity" requires at least two acts of racketeering activity.  *Edwards v. Prime Inc*., 602 F.3d 1276, 1292 (11th Cir. 2010)

Plaintiffs' RICO claim fails to sufficiently plead the predicate acts that establish a "pattern of racketeering."   Plaintiffs allege in their Complaint that Spirit's "pattern of racketeering" consisted of violations of the federal mail and wire fraud statutes.  Mail and wire fraud are analytically identical except for the method of execution, as "both offenses require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice."  *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007).  A scheme or

artifice to defraud "requires proof of material misrepresentations, or the omission or concealment of a material facts."  *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).

Here, while the Complaint has some detail in its description of Spirit's conduct, none of that conduct amounts to actionable fraud.  The PUF was not omitted or concealed, as illustrated by the confirmation pages contained within Plaintiffs' Complaint, wherein the PUF *was listed* with the total "Purchase Price" of the ticket.  (Cplt., ¶ 43).  The PUF was not even a mandatory fee – it was only charged for online sales and not the purchase of a ticket at the airport.  (Cplt., ¶¶ 9, 46).  Plaintiffs suggest that the PUF was allegedly misrepresented because it "seem[ed] official" and "sound[ed] like and appear[ed] together with the official governmental taxes and fees."  (Cplt., ¶ 45).  Yet, the PUF was not labeled as a government tax or fee, was not listed under a title of "government taxes and fees" and Plaintiffs did not even allege that they personally believed the PUF was a government fee.  (Cplt., ¶ 40).  Thus, aside from baldly concluding that the location of the PUF "seemed" to be something that it was not, Plaintiffs failed to plead any further specificity that would satisfy the pleading requirements under Rule 9(b).

Without an actionable omission, concealment, or misrepresentation upon which to rely to establish a violation of the mail and wire fraud statutes, Plaintiffs are left to argue that Spirit's purported violations of Department regulations constituted the necessary fraud.  However, the Eleventh Circuit's decision in *Ayres v. GMC* forecloses that argument.  234 F.3d 514.  Again, in *Ayres*, the plaintiffs contended that the defendants' failure to disclose a defect under the Safety Act equated to mail and wire fraud and constituted racketeering activity.  *Id*. at 521.  The Eleventh Circuit rejected that position, holding that "the Safety Act was not meant to create the kind of duty, a breach of which would create criminal liability or civil liability under RICO

18

statutes." *Id*. at 521-22.   The Court concluded that "[t]o permit plaintiffs to convert non-compliance with the notification requirement found in the Safety Act, a regulatory statute with its own administrative remedies, into mail and wire fraud and thereby to maintain a civil RICO action would upset the purposes and contradict the intent of the statute." *Id*. at 525.   Similarly, here, Plaintiffs have failed to plead a single act of mail or wire fraud, much less a "pattern", that is separate and apart from its allegations that the Spirit website and price advertisements were "deceptive."   None of those conclusions results in pleading actionable mail or wire fraud claims.

### B.  Plaintiffs have not pled that Spirit's alleged conduct caused any injury.

In addition to alleging a violation of § 1962, with adequate specificity, civil RICO plaintiffs must also show (1) the requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation.  *Williams*, 465 F.3d at 1283.   To establish the "by reason of'" element, a plaintiff must plead that the defendant's violation was not only the "but for" cause of the plaintiff's injury, but also its proximate cause.  *Id.* at 1287.

Plaintiffs assert that they have been "damaged by Spirit's misconduct" in that they "incurred and/or will continue to incur unfair and unconscionable hidden fees."  (Cplt., ¶ 29).  Even presuming Plaintiffs have no other purchasing options, the alleged injury is not cognizable under RICO.  A plaintiff asserting a claim under RICO must allege an *economic injury* arising from the defendant's actions.  *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985).  Being "deceived" is not an injury recognizable under a RICO claim, and thus, the only "injury" that Plaintiffs can claim is the actual cost of the PUF ($8.99-$16.99).  (Cplt., ¶ 9).  That said, airlines, subject to the requirements of the FAA and Department regulations, are free to charge different prices to different groups of people on different days.  49 U.S.C. §§ 40101 *et seq*.; *See, e.g., Langford v. Rite Aid of Ala., Inc*., 231 F.3d 1308, 1313-1314 (11th Cir. 2000) (finding that

as "a general matter of federal law, retailers are under no obligation to disclose their pricing structure to consumers" and stating as an example that "airlines frequently charge different groups of consumers different rates for the same seat."). Thus, being charged a purportedly "unconscionable fee" of $8.99 is not the type of injury for which RICO provides relief.

Further, Plaintiffs, without an ascertainable injury, cannot establish actual or proximate cause.  The fact that Plaintiffs admit that they were given the full price of the ticket, with the PUF included and disclosed, prior to confirming the purchase online, makes it impossible for any alleged "deceptive marketing" to be the cause of the "injury."  Moreover, Plaintiffs do not even allege that they would not have made their airline ticket purchase if the PUF had been included within the "base fare" (as opposed to the PUF being a separately designated fee) because the Spirit fare presumably would now be "greater than" some other competitor's price.  Plaintiffs cannot expect this Court to infer that actual or proximate *cause* has been pled without Plaintiffs alleging that they would have acted differently had the PUF increase been a part of the base fare. *See e.g. Southeast Laborers Health & Welfare Fund v. Bayer Corp.,* 444 Fed. Appx. 401, 409-410 (11th Cir. 2011) (dismissing plaintiffs' claims where plaintiffs failed to allege facts demonstrating that they would have acted differently if the information had been disclosed).

Therefore, Plaintiffs' inability to plead the elements of a RICO claim with adequate specificity, mandates that their RICO claim be dismissed on this basis, as well.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant, Spirit Airlines, Inc., respectfully requests that this Court dismiss Plaintiffs' Amended Complaint with prejudice, and grant such other relief as it deems appropriate.

Respectfully submitted

DIMOND KAPLAN & ROTHSTEIN, P.A.
 Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone:     (305) 374-1920
Facsimile:      (305) 374-1961

By:   /s Scott M. Dimond
     Scott M. Dimond, Esq.
        Sdimond@dkrpa.com
     Fla. Bar No.: 995762
     *Local Counsel for Defendant*

          ---

Daniel T. Graham, Esq. (6203811)
    dgraham@clarkhill.com
Admitted *pro hac vice*
Leslie Gutierrez, Esq. (6306080)
    lgutierrez@clarkhill.com
Admitted *pro hac vice*
CLARK HILL PLC
150 N. Michigan Avenue, Suite 2700
Chicago, IL  60601
Telephone:     (312) 985-5900
Facsimile:      (312) 985-5919
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 28, 2012, I filed Defendant Spirit Airlines, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint and Memorandum of Law in Support Thereof with the Clerk of the Court via CM/ECF and the CM/ECF system will send a notice of electronic filing to the counsel and parties of record.

                    By: s/ Scott M. Dimond
                         Scott M. Dimond