UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61528-Civ-SCOLA

BRYAN RAY, et al.,

    Plaintiffs,

vs.

SPIRIT AIRLINES, INC.,

    Defendant.

_____/

**<u>Order Granting Motion to Dismiss</u>**

    THIS MATTER is before the Court on Defendant Spirit Airlines, Inc.'s ("Spirit") Motion to Dismiss (ECF No. 39). The Court has carefully considered the applicable law, the parties' submissions and oral argument. For the reasons explained below, the Motion is granted, but Plaintiffs shall be given an opportunity to amend.

**<u>Introduction</u>**[1]

    Spirit prides itself on being an "Ultra Low Cost Carrier" with the lowest fares in the airline industry. Although it advertises lower fares, Spirit adds additional charges and fees to generate "non-ticket revenue." One additional charge is the "Passenger Usage Fee" ("PUF"), a fee charged to consumers who purchase tickets on Spirit's website or through Spirit's call center. According to Plaintiffs, this PUF is really additional fare buried amongst official taxes and fees. That way, Spirit can advertise low base fares, but recover the revenue under the guise of a service fee.

    The PUF is not readily apparent on Spirit's website when a consumer is searching for available flights. When searching for a flight, a consumer sees only the base fare. Before completing the purchase, the consumer is directed to "confirm" the flights selected. The "Confirm Flights" webpage displays both the base fare and an amount labeled "Taxes & Fees." The webpage does not

---

[1] This introductory section is comprised of Plaintiffs' allegations, which the Court accepts as true and construes in the light most favorable to them under Federal Rule of Civil Procedure 12(b)(6).

contain any breakdown of the taxes and fees charged. To identify those taxes and fees, a consumer needs to click on an additional link labeled "more information." A drop down box reveals numerous official government taxes and fees, along with the PUF. Although listed with official governmental taxes and fees, Spirit kept the PUF to increase its profit margin and induce consumers into believing its fares are lower than its competitors' fares.

The Department of Transportation ("DOT"), which regulates the way in which airlines can advertise fares and fees, permits airlines to charge only three types of fees: (1) the base airfare, (2) official governmental taxes and fees that are remitted to a governmental or regulatory authority, and (3) carrier-imposed ancillary charges, including baggage fees, change fees, and advance-seat-assignment fees. According to the Amended Complaint, the PUF does not fall within any of these three categories. Plaintiffs allege that in addition to the misleading placement of the PUF, the PUF itself is impermissible.

Spirit has a long history of flouting DOT rules and regulations, including rules regarding convenience fees like Spirit's PUF. The DOT issued notices and warnings advising the airline industry that failing to adequately disclose additional fees would violate DOT regulations. In 2008, when Spirit failed to comply, the DOT found that Spirit's failure to include the PUF in the advertised base fare violated the rules prohibiting airlines from engaging in unfair and deceptive trade practices and unfair method of competitions. (*See* Dec. 23, 2008 Consent Order, ECF No. 35-3.) In September of 2009, the DOT again found the way in which Spirit advertises the PUF and its fares to be an unfair and deceptive trade practice and unfair method of competition. (*See* Sept. 17, 2009 Consent Order, ECF No. 35-4.) Most recently, in November of 2011, the DOT found that Spirit failed to adequately disclose its own additional fees. (*See* Nov. 21, 2011 Consent Order, ECF No. 35-5.)

Plaintiffs allege that Spirit concealed the existence and purpose of the PUF, and that this amounts to a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c).

## Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The plaintiff must

nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010).

## Analysis

Spirit argues that Plaintiffs' claim is an improper attempt to circumvent the regulatory scheme established in the Airline Deregulation Act ("ADA"). Spirit also argues that the complaint should be dismissed because the Plaintiffs fail to adequately allege both a predicate act and injury under RICO. Plaintiffs counter that that the ADA does not preclude this action and that they have adequately alleged a RICO violation.

### A. The Federal Aviation Act and Airline Deregulation Act

The Federal Aviation Act ("FAA") prohibits airlines from using unfair or deceptive trade practices and from using unfair methods of competition in the sale of air transportation. 49 U.S.C. § 41712. Tasked with enforcing this FAA provision, the Department of Transportation ("DOT") has established the "full-

fare advertising rule" which requires that any advertised price for air transportation disclose the "entire price to be paid by the consumer." 14 C.F.R. § 399.84(a); *see also Spirit Airlines, Inc. v. U.S. Dept. of Transportation*, 687 F.3d 403, 410-11 (D.C. Cir. 2012) (finding that the DOT's revised policy requiring airlines to state the total, final price for airfare was an appropriate exercise of the DOT's statutory authority). Non-governmental surcharges and fees, such as service fees for tickets purchased over the telephone or online, must be included in the advertised fare. *Spirit Airlines, Inc.*, 687 F.3d at 408-09, 410-11. (Jan. 18, 2001 Notice, ECF 35-1.) Failure to comply with the full-fare advertising rule is a violation of the FAA's prohibition against unfair and deceptive trade practices. (Jan. 18, 2001 Notice, ECF 35-1.)

The FAA established a "comprehensive federal regulatory scheme governing air carriers." The FAA allowed consumers to bring complaints about deceptive advertising to the Civil Aeronautics Board ("CAB"), and the CAB would, in turn, investigate those claims. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1250 (6th Cir. 1998). Initially, the FAA allowed states to enforce their own laws against deceptive trade practices against airlines. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). So, in addition to administrative remedies provided in the FAA, private parties could bring common-law tort actions alleging unfair or deceptive practices in the sale of air transportation. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 301 (1976).

In 1978, Congress enacted the Airline Deregulation Act ("ADA") after determining that competitive market forces, and not extensive federal regulations, would better serve the interests of the airline industry. The CAB retained the authority to enforce provisions prohibiting deceptive trade practices under the ADA, and that authority was transferred to the DOT in 1985. *Morales*, 504 US at 378. Now, the DOT is tasked with investigating and deciding "whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation." 49 U.S.C. § 41712. Any person may file a complaint with the DOT requesting that the DOT begin a proceeding to decide whether an air carrier's practice is unfair or deceptive. 49 U.S.C. § 46101; *Musson*, 89 F.3d at 1250-51. If the DOT determines that a practice violates the full-fare advertising rule, the DOT may impose a civil penalty of not more than $1,000 for each violation and not more than $25,000 for a related series of violations. 49 U.S.C. §§ 1155, 46301.

The ADA contains an express pre-emption provision to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 US at 378. The provision prohibits states from enacting or enforcing any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(4)(A). The ADA also contains a savings clause: "[a]ny remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c).

Outside the confines of RICO, Plaintiffs would have no cause of action for fraud against Spirit relating to the PUF. The ADA preempts any state common-law claim regarding where the PUF is placed on the website, what information about the PUF is disclosed on the website, and whether the PUF is a proper fee. *See Morales*, 504 U.S. at 388 (finding that restrictions on fare advertising have a significant effect on fares). Plaintiffs could not assert a claim under a theory of federal common-law fraud – there is no authority that suggests that a federal common-law cause of action for fraud against air carriers exists, and Plaintiffs do not argue otherwise. *See Musson*, 89 F.3d at 1249-52 (finding that a federal common-law fraud claim is inappropriate because Congress intended the DOT to be the sole legal control on possible advertising fraud by air carriers). And, although they rely heavily on the FAA and DOT regulations in their complaint, there is no private cause of action under the FAA for deceptive-fare advertisements and taxes. 49 U.S.C. § 41712.

Plaintiffs argue that their RICO claim is appropriate because, as a federal claim, RICO falls outside of the ADA's preemption clause. But can Plaintiffs use RICO to assert a cause of action for fraud against an airline that would, in all other circumstances, be prohibited? The Court finds that they cannot.

At its core, Plaintiffs' complaint challenges conduct expressly regulated by the FAA – they challenge Spirit's practice of "presenting, assessing and collecting the bogus and unconscionable PUF." (Compl. ¶ 12, ECF No. 35.) The DOT has established express rules on how the PUF and similar service fees may be presented, assessed, and collected. Indeed, the DOT has already found that Spirit has presented and collected the PUF in a misleading way and that Spirit violated the FAA's prohibition against unfair and deceptive practices, and has fined Spirit for its violations. (*See* Notice, ECF No. 35-2; Dec. 23, 2008 Consent Order, ECF No. 35-3, Sept. 17, 2009 Consent Order, ECF No. 35-4, Nov. 21, 2011 Consent Order, ECF No. 35-5.)

Private parties do not have a cause of action under 49 U.S.C. § 41712, and Plaintiffs cannot assert a violation of this provision as a basis for a RICO action. Plaintiffs argue that the predicate act alleged in their complaint is not a violation of the FAA, but instead federal mail and wire fraud – Spirit engaged in deceptive conduct by making misrepresentations or omissions in order to charge consumers an illusory fee. The broad remedial scheme, including "limits on civil penalties, the absence of a private right of action, and the option of private parties to petition for administrative action," precludes Plaintiffs from challenging Spirit's fees and fares by artfully alleging these challenges as a RICO violation. *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000) ("[G]iven the limits on the civil penalties, the absence of a private right of action, and the option of private parties to petition for administrative action, it is also clear that congress did not intend for a violation of the Safety Act's notification requirement to be the basis for a private civil RICO action, which would permit unlimited, treble damages.").

Plaintiffs argue that without RICO, consumers will be left with no recourse to challenge the PUF because the DOT cannot award damages to an injured party. After a review of the ADA and its history, however, it appears that this is exactly what Congress intended – Congress intended that only the CAB, and now the DOT, would be able to challenge airline fares, taxes, and advertisements relating to fares. The FAA establishes its own administrative remedies for a violation of the prohibition against unfair or deceptive trade practices related to fares and fees. The DOT can determine whether an advertising practice violates this provision, and a company found in violation of the full-fare rule is subject to a civil penalty. And, consumers may request that the DOT begin a proceeding to decide whether a certain practice is unfair or deceptive. *Musson*, 89 F.3d at 1250-51.

Legislative history for the Sunset Act (the act that transitioned the CAB's authority to the DOT) provides additional evidence that Congress intended to give the DOT, and not private parties, the right to regulate consumer-protection issues related to fares. The House Report states that the Sunset Act is needed "to ensure that some limited but highly important CAB functions, such as consumer protection, will continue to be carried out by other agencies after CAB sunset." *Statland v. Am. Airlines, Inc.*, 988 F.2d 539, 541 (7th Cir. 1993) (quoting H.R. Rep. No. 98-793, 98th Cong. 2d Sess. 1, 14, reprinted in 1984 U.S.C.C.A.N. 2857, 2858) ("The [House] Report thus establishes that DOT, not private parties, will enforce consumer protection rules against the airlines.").

Plaintiffs also argue that the ADA's savings clause preserves Plaintiffs' RICO claim. While the ADA and FAA grant the DOT authority to impose and enforce standards with respect to rates, routes, or services, the DOT does not have authority to regulate all aspects of an airlines relationship with consumers. Consumers may still bring breach-of-contract actions against an airline. *Am. Airlines, Inc. v. Wolens*, 513 219, 232 (1995). Consumers may also bring state-law tort claims against airlines. *Barbakow v. USAir, Inc.*, 950 F. Supp. 1145, 1147-49 (S.D. Fla. 1996) (Ferguson, J.) (passenger's personal-injury claim based on flight attendant's alleged negligence in dropping can on passenger's foot was not preempted by the ADA); *Fenn v. Am. Airlines, Inc.*, 836 F. Supp. 1218, 1223-24 (S.D. Miss. 1993) (claims for false imprisonment and slander not preempted by the ADA).

Considering the preemption provision, the general savings clause, and the FAA's prohibition against unfair or deceptive trade practices together, the Court finds that Congress intended the DOT to be the sole legal control on deceptive fees and deceptive advertising of fees and fare information. Allowing Plaintiffs to use RICO to claim fraud regarding the PUF – something that otherwise falls within the preemptive scope of the ADA – would allow Plaintiffs to create a loophole in Congress's otherwise expansive regulatory regime. Plaintiffs may not use RICO to challenge Spirit's fees and fare advertisements as deceptive.

### B. RICO

Spirit argues that the ADA precludes Plaintiffs from challenging any of its advertisements, but the FAA and ADA cannot be read so broadly. And although a majority of Plaintiffs' allegations attempt to use RICO to assert a private claim for a violation of the FAA's full-fare disclosure rules, a careful reading of the complaint demonstrates that Plaintiffs have alleged an additional misrepresentation or scheme to defraud – that Spirit's marketing materials encourage consumers to purchase tickets online but fail to disclose that tickets purchased online will be subject to an additional fee. These alleged misrepresentations fall outside of the FAA's purview because they do not address or impact Spirit's rates, routes, or services, and instead concern Spirit's claims that its website is the superior method of finding and booking flights. While misrepresentations about the benefits of booking on Spirit's website may form the basis of a RICO claim, Plaintiffs have not properly alleged a predicate act and injury.

To state a claim for a RICO violation under Section 1962(c), a plaintiff must allege that the defendant participated in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined to include the predicate acts of mail and wire fraud. 18 U.S.C. § 1961(1). "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991). To show a pattern, the plaintiff must allege "at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290-91 (11th Cir. 2010).

      a. *Predicate Acts – Mail and Wire Fraud*

Because the only predicate acts Plaintiffs allege under their section 1962(c) claim are based on mail and wire fraud, their allegations must also meet the heightened pleading standard set forth under Rule 9(b) of the Federal Rules of Civil Procedure. *Am. Dental Assoc.*, 605 F.3d at 1291. Plaintiffs must state the circumstances constituting fraud with particularity and "must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statement misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Plaintiffs allege that Spirit's marketing materials tout the benefits of purchasing tickets on Spirit's website but fail to disclose that an additional fee will apply to any online purchases. According to the complaint, these advertisements were fraudulent because they omitted material information regarding the consequences of selecting Spirit's website as the vehicle for purchasing tickets. Plaintiffs have failed to particularly plead facts sufficient to allege a RICO violation under the heightened pleading standard applicable here. Plaintiffs do not, for example, plead the precise statements made in Spirit's advertisements. Plaintiffs will be granted leave to re-plead their RICO claim based on this misrepresentation.

      b. *Injury*

To adequately allege an injury, Plaintiffs must allege (1) a sufficiently direct injury so that they have standing to sue, and (2) proximate cause. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006). "When a court evaluates a RICO claim for proximate causation, the central question it

must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Plaintiffs allege that Spirit's conduct caused them to "needlessly incur[] excessive and unconscionable PUFs." They have adequately alleged a direct injury – the out-of-pocket monetary loss Plaintiffs incurred by paying the PUF. Plaintiffs fail, however, to include any allegations linking this loss to the fraud here. If the Plaintiffs choose to file a third amended complaint, they should include specific allegations that they would have acted differently if the PUF had been disclosed in Spirit's advertisements encouraging consumers to purchase their tickets via Spirit's website.

## Conclusion

For the reasons stated above, Spirit's Motion to Dismiss (ECF No. 39) is **Granted**. Plaintiffs are given leave to file a third amended complaint to set forth a RICO claim based on Spirit's alleged misrepresentations in its marketing materials that encourage consumers to purchase tickets online but fail to disclose that tickets purchased online will be subject to an additional fee. The third amended complaint must be filed no later than **November 15, 2013**. If Plaintiffs do not file an amended pleading by that date, the Court will enter judgment and close the case.

**Done and Ordered** in chambers at Miami, Florida on October 28, 2013.

_____
**Robert N. Scola, Jr.**
**United States District Judge**